# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**WILLIE J. HARRIS**                                                                  **PLAINTIFF**

**V.**                                                                      **NO. 4:13-CV-00140-DMB-DAS**

**LORENZO CABE, et al.**                                                     **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This civil rights action filed by Willie J. Harris is before the Court on the motion of Harris to extend the deadline to respond to this Court's August 8, 2016, order to show cause. Doc. #117. Because Harris' claims must be dismissed sua sponte for failure to state a claim, the motion for extension will be denied as moot.

## I
## Relevant Procedural History

On August 7, 2013, Harris filed a prisoner complaint in this Court alleging that: (1) he was "unlawfully transferred and reduced in custody contrary to MDOC policy … in April, and May of 2012;" (2) he is being denied medical treatment in retaliation for filing a previous civil action; (3) his "prison account is being embezzled" in retaliation for filing a previous civil action; (4) he is being "deprived of adequate food contrary to MDOC policy and Fourteenth Amendments [sic];" (5) he is "denied religious practice and bias [sic] toward [his] Muslim faith contrary to MDOC policy and Fourteenth Amendments [sic];" and (6) he is "being forced to work a job …. [c]ontrary to MDOC policy … that elevates his physical ailment (high blood pressure) in violation of the Eighth, and Fourteenth Amendments." The complaint named sixteen individuals as defendants.[1] On September 24, 2013, on motion of Harris, United States

---

[1] The complaint named as defendants Lorenzo Cabe, Gloria Perry, Angela Brown, Dennis Gregory, Archie Longley, Earnest Lee, Faye Noel, Reginald Steward, Verlena Flagg, Barbara Scott, Roger Davis, Michele Watson, Stanley

Magistrate Judge David A. Sanders granted Harris leave to proceed with this action in forma pauperis.

On October 9, 2013, Harris filed a motion to amend his complaint. The proposed amended complaint included the same six claims but added factual allegations in support of the claims. Judge Sanders granted the motion to amend on December 3, 2013.

Judge Sanders convened a *Spears* hearing on December 5, 2013, and, on December 18, 2013, issued a Report and Recommendation. In his Report and Recommendation, Judge Sanders summarized Harris' claims as follows:

**Reduction in Custody Status**

Harris claims that he was improperly reduced from B-custody to C-custody and moved away from the Marshall County Correctional Facility.

**Denial of Adequate Medical Treatment**

Harris claims that he was denied adequate medical treatment while housed at Unit 29 at Parchman [Penitentiary].

**Retaliation**

Harris also claims that he has experienced retaliation from both medical and security staff because of the suit he filed over some of these issues in Sunflower County Circuit Court.

**Embezzlement**

As a result of various medical findings, Harris is being charged for his visits to medical, though inmates under chronic care are not supposed to be charged for visits relating to their chronic conditions.

**Denial of Adequate Food**

Harris also alleges that, among his many chronic conditions, he stays seriously underweight. As such, he had been put on a 3,000 calorie per day diet with

---

Williams, Carolyn Orr, Darlester Foster, and Pamela Robinson. A summary of each claim brought against each defendant is contained in the December 18, 2013, Report and Recommendation issued by United States Magistrate Judge David A. Sanders.

Ensure and several snack bags per day. He is no longer being served that diet, and he believes that the lower caloric intake is endangering his health.

**Violation of Harris' Right to Free Exercise**

Harris is Muslim, and he and his fellow Muslims have had their requests denied regarding having their meals in the dining hall in the evening during Ramadan (when Muslims are required to eat only at night). The prison staff delivered the Ramadan meals to their cells, instead of escorting the Muslim prisoners to the dining hall, often outside the appropriate times for taking food during Ramadan. Harris also alleges that, while inmates of other faiths are able to attend a group worship service, the Muslims at Unit 29 may not.

**Working at a Job that Endangers His Health**

Harris has been assigned to work in Field Operations, a strenuous job that causes him great difficulty with the following ailments: (1) high blood pressure, (2) high cholesterol, (3) anemia, (4) nail fungus, (5) dislocated back, (6) tendonitis, (7) arthritis, (8) athlete's foot, and (9) being severely underweight. Harris is 6'1", and weighs 137 pounds. He believes that a job in field operations aggravates pretty much all of his conditions.

In the same Report and Recommendation, Judge Sanders summarized the specific allegations against each named defendant:

(a) Associate Warden Verlena Flagg
    (1) Reclassified Harris from B- to C-custody based upon a flawed disciplinary process

(b) Chief Medical Officer Gloria Perry
    (1) Denied Failed to respond to Harris' grievances regarding medical treatment.
    (2) Failed to correct perceived defects in the process used at the disciplinary hearing.

(c) Mississippi State Penitentiary Medical Director Dr. Lorenzo Cabe
    (1) Denial of medical care (ignoring previous physicians' orders, diagnoses)
    (2) Retaliation for filing lawsuits and grievances
    (3) Did not ensure that Harris received snack bags and a cardio tray

(d) Angela Brown
    (1) Improperly charged Harris for chronic care treatment
    (2) Retaliation for lawsuits, grievances

(e) Health Administrator Dennis Gregory

  (1) Ignored Harris' profiles for a coat, blanket, and thermal underwear, and diet

(f) MDOC Deputy Commissioner Archie Longley
  (1) Failed to correct subordinates regarding Harris' claims
  (2) Failed to respond to Harris' grievances
  (3) Tried to block Harris' mail from getting to the court

(g) Mississippi State Penitentiary Superintendent Earnest Lee
  (1) Failed to correct subordinates regarding Harris' claims through the grievance process

(h) Unit 29 Warden Faye Noel
  (1) Ignored Harris' direct complaints about his claims
  (2) Put Harris on lockdown to keep from religious services
  (3) Stopped Harris from going to the dining hall during Ramadan
  (4) Took Harris' blanket and coat, contrary to his medical profile permitting them

(i) Unit 29 Deputy Warden Reginald Steward
  (1) Ignored Harris' direct complaints about his claims
  (2) Retaliated against Harris when he refused to be a snitch for Steward
  (3) Ignored Harris' medical profiles as retaliation
  (4) Threatened Harris with Rule Violation Reports if he would not stop filing grievances and lawsuits
  (5) Took away yard call in retaliation for Harris' filing of grievances and lawsuits
  (6) Told Harris that "security overrides medical," contrary to Mississippi Department of Corrections policy
  (7) Threatened to keep Harris "in the hole" if he would not agree to snitch on his fellow inmates, even though snitches, when discovered, are at high risk for serious injury or death at the hands of other inmates

(j) Correctional Supervisor Barbara Scott
  (1) After reviewing his medical profiles, she physically took Harris' coat, blanket, and underwear and said, "Let me be the one you take to court."

(k) Unit 29 Associate Warden Darlester Foster (who is also head of Classification)
  (1) Refused to correct Harris' improper reduction in custody classification
  (2) Placed Harris on a work detail (Field Operations) which is detrimental to his health

(l) Associate Director of Offender Services Pamela Robinson
  (1) Failed to correct Harris' improper custody downgrade

(m) Unit 29-D Case Manager Carolyn Orr
   (1) Placed Harris on a work detail (Field Operations) which is detrimental to his health, even though she knew about Harris' many medical profiles

(n) MDOC Food Director Roger Davis
   (1) Davis, who sets forth the various menus used in the prison, refused to correct the actions of his subordinates, including Michelle Watson, regarding getting the right food to the right inmate

(o) Kitchen Supervisor Michelle Watson
   (1) Will not let Harris sign for his medical diet to provide proof that he is not receiving the meals he is supposed to.
   (2) Does not provide Harris with enough food to sustain him.
   (3) Told Harris to "eat off the line," even though the standard food did not comply with his medical profiles

(p) Unit 29 Chaplain Stanley Williams
   (1) Denied Harris permission to attend Ramadan services
   (2) At the behest of a woman who wanted to retaliate against Harris, kept him from attending a non-denominational Kairos Prison Ministry meetings for 10 months
   (3) Would not let Harris and other Muslim inmates go to the dining hall to eat after hours for Ramadan, but instead had their meals brought to their cells.

After evaluating Harris' allegations, Judge Sanders recommended that: (1) the reduction in custody status claim be dismissed; and (2) five of the named defendants (Pamela Robinson, Verlena Flagg, Gloria Perry, Earnest Lee, and Roger Davis) be dismissed for failure to state a claim. The Court subsequently adopted Judge Sanders' Report and Recommendation.

On August 8, 2016, this Court issued a Memorandum Opinion and Order dismissing all defendants in this action except for Gregory and Cabe. With regard to these defendants, the Court directed Harris, "no later than September 1, 2016, to show cause why his claims against Cabe and Gregory should not be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure." On August 29, 2016, Harris filed a motion to extend the deadline to respond to the order to show cause.

**II**
**Merits of Remaining Claims**

"Title 28 U.S.C. § 1915(e)(2)(B)(ii) requires the district court to dismiss an in forma pauperis ('IFP') prisoner complaint if it finds that the action does not state a claim upon which relief may be granted." *Legate v. Livingston*, 822 F.3d 207, 209 (5th Cir. 2016). Pursuant to this provision, a court evaluates whether an IFP prisoner complaint states a claim under "the same standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 209–10. Thus, an IFP prisoner "complaint will survive dismissal for failure to state a claim if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 210 (internal quotation marks omitted) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To meet this threshold, a prisoner "must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted). Dismissals under § 1915(e)(2)(B) may be sua sponte. *Foreman v. Potter*, 382 F. App'x 370, 372 (5th Cir. 2010). Because Harris' claims against Cabe and Gregory fail to state a claim under which relief may be granted, they must be dismissed.

**A. Claims Against Cabe**

As stated in Judge Sanders' Report and Recommendation, Harris alleges three types of misconduct against Cabe: (1) "Denial of medical care (ignoring previous physicians' orders, diagnoses);" (2) failure to "ensure that Harris received snack bags and a cardio tray;" and (3) "Retaliation for filing lawsuits and grievances." The Court interprets these allegations as raising a claim for denial of adequate medical care and a claim for retaliation.

**1. Denial of Adequate Medical Care**

"To state a claim for unconstitutional denial of medical treatment, a convicted prisoner must show that medical care was denied or delayed and that this denial or delay constituted

6

deliberate indifference to his serious medical needs." *Mercer v. United States*, 508 F. App'x 324, 325 (5th Cir. 2013) (citing *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991)).

Harris sets forth only one allegation against Dr. Cabe. He alleges that "Cabe acted with deliberate indifference by ignoring the express orders of Harris['] prior physicians for reasons unrelated to the medical needs of Harris." Doc. #9 at 6. Harris does not state what prior orders Cabe may have ignored, what medical conditions the orders may have involved, or what reasons Cabe might have had for making his decision. Even construing this allegation to include the various orders identified below in the discussion involving Gregory, the allegations fail to state a claim upon which relief could be granted because "[c]onsidering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 350 (5th Cir. 2006). Harris simply disagrees with the different course of medical treatment chosen by his medical provider, and that disagreement does not rise to the level of a constitutional violation. *Id*.

### 2. Retaliation

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)

In a June 30, 2013, request form addressed to Cabe, Harris alleges that Cabe denied Harris his "chronic care meds [as] nothing but retaliation [for] the May 19, 2013, medical ARP [grievance] ...." Doc. #9 at 30.

7

Harris has not shown: (1) that Cabe knew of the May 19, 2013, grievance when Harris wrote the June 30, 2013, letter (the grievance was addressed to former Commissioner Christopher Epps), (2) that Cabe ultimately made the decisions regarding Harris' medical treatment for the problems at issue, or (3) even if Cabe did make those decisions, that he made them *after* Harris filed the grievance in question. As such, Harris has alleged only his "personal belief that he is the victim of retaliation," which is insufficient to state a § 1983 claim. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). As such, his allegations against Cabe must be dismissed for failure to state a claim upon which relief could be granted.

### B. Claims Against Gregory

As interpreted by Judge Sanders, the sole claim brought against Gregory is a denial of medical treatment. In this regard, the record shows that Harris complained to Gregory about various medical decisions made by his healthcare providers at the prison and that Gregory deferred to the providers. Specifically, it appears that on July 3, 2013, Gregory responded to several of Harris' medical requests that had been passed along to him. Harris had complained that on September 18, 2009, a doctor had ordered a permanent medical profile for a coat, thermal underwear, and blankets, for Harris, but on September 30, 2013, Nurse Practitioner Gary Hamil cancelled the order. Gregory informed Harris that medical "[o]rders can be written and cancelled by the medical provider," and that Gregory is "not a doctor and cannot direct their medical decisions." Doc. #9 at 48.

Harris also complained that on November 24, 2007, a prison doctor had ordered him to be placed on a 3,000 calorie per day diet with snack bag and Boost, but he no longer received that diet regimen. Gregory stated in response that, "[d]iet orders are good for one year and must be evaluated by the provider to see if a new order is medically necessary. I don't see anything

recent that indicates you need this renewed. Parchman does not prescribe 3,000 calorie diets with snack bags. Snack bags are ordered for insulin dependent diabetics only." *Id*. In addition, Harris requested a CAT scan of his head after he injured it during a fall in the shower. In response, Gregory requested "that the onsite medical director schedule you for a f/u appointment to evaluate whether a CAT Scan i[s] medically indicated now." *Id*. Finally, Harris had questions about the medication he was taking and whether he was receiving the correct ones from the pharmacy. Gregory let Harris know that his "medication[s] remain at the sole discretion of your provider. If there is any change in your current condition or medical status, please let the onsite medical provider know thru the sick call process." *Id*.

"[S]upervisory officials are entitled to defer to the judgment of medical professionals." *Pilinski v. Goodwin*, No. 12-1443, 2015 WL 2250377, at *5 (W.D. La. May 12, 2015) (collecting cases). Accordingly, a supervisor does not act with deliberate indifference when he defers to the medical decisions of a plaintiff's provider. *Id*. Here, it appears that Gregory deferred to Harris' medical providers and did not, therefore, act with deliberate indifference to Harris' medical needs. Accordingly, the sole claim against Gregory must be dismissed.

### III
### Motion for Extension

Harris has moved to extend the deadline to show cause why Cabe and Gregory have not been properly served. Doc. #117. Because this Court has concluded that the claims against Cabe and Gregory must be dismissed, the motion for extension will be denied as moot.

### IV
### Conclusion

For the reasons above, the Court concludes that the claims asserted against Cabe and Gregory do not state a claim and that, therefore, the claims must be dismissed. Accordingly,

9

Harris' motion for extension to show cause why Cabe and Gregory have not been properly served [117] is **DENIED as Moot**. Because this order disposes of all remaining claims in this matter, a separate final judgment will issue today.

**SO ORDERED**, this 29th day of September, 2016.

<u>**/s/ Debra M. Brown**</u>
**UNITED STATES DISTRICT JUDGE**